Please call the next case. Members of the Appellate Court, Opposing Counsel, My name is Gary Friedman and I represent the Appellant Cheryl Cornwell Tatum. As you probably can discern from the brief that I filed, the issue in this case is whether or not Illinois has jurisdiction to hear this workers' compensation case. As I cite in my brief and as is noted by the Act itself, Illinois will have jurisdiction in a workers' compensation case if the contract for hire occurs in Illinois. That is, the contract for hire is made when the last act necessary to give the validity occurs. We agree with that definition? Yes, that's true. Can you call our attention to the last act here? I'm sorry? Can you call our attention to what that specific act was that gives validity to the contract? The last act, well first of all, the respondent or the employer claims that the contract of hire was made by a telephone call on February 11, 2008. While the plaintiff appellant petitioner denies that she accepted the offer, the last act occurred in Illinois because the contract itself or the offer itself was conditional and contingent. It said that she would not become an employee until certain things were met. One is she had to come to Illinois, pass a drug test, she had to be certified to legally work in the U.S., and she had to pass a background test. Now the person who actually hired her, or allegedly hired her, Mark Palouse, testified on multiple occasions in affirmation of the fact that this contract, the last act, was in Illinois. He referred to the process that she was undergoing as a pre-employment process. He said, under cross-examination, that if she didn't complete the process and didn't pass the process, she would not become an employee. He used the word become employee. Again, he refers to pre-employment. He refers to become an employee. Well, you mentioned a drug test, and perhaps we can deal with it because I don't know if it's that complicated. Wasn't it clear that Palouse received the satisfactory results of the claimant's drug test on February 14th before she ever came to Illinois? So how is that still a condition precedent? Well, in addition to that, there were other conditions. I understand, but you mentioned the drug test. Is it not true that that was completed before she came to Illinois? That's true. On the other hand, one could argue that the drug test, while it was completed somewhere else, came to Woodridge, Illinois, and therefore, when it arrived in Woodridge, Illinois, where their corporate headquarters is, is where the drug test actually was received and actually acknowledged that it passed. Again, the arbitrator decided that jurisdiction was Illinois. It was in Illinois. And in my judgment, it was on all fours. The commission, if you look at the commission's decision, they referred to a case, a commission case, the Masterson case, that deals with two people face-to-face who shook hands in Illinois. So they relied on that, and they said that that was analogous to the situation here. That's not even close. My client was in Georgia. Their corporate headquarters was in Illinois. They also used the argument, the commission itself seems to argue, well, they spend a lot of money to have this woman come in to Illinois, so therefore, she must have been an employee before. Well, I mean, again, we all know that large corporations bring people in. It doesn't mean that they're employees. Law firms bring people from all over the country to come in, spend money. It's a tax deduction for sure, but on the other hand, that doesn't mean that you're an employee. The overwhelming evidence is that everything other than the telephone call occurred in Woodridge, Illinois. Now, do you dispute the notion that as to the verification of employment, that there wasn't a condition proceeding to employment? The argument itself says it wasn't. Well, according to the contract itself and according to the testimony, in addition to the drug test, you had to be certified to legally work in the United States and had to pass a background test. And, again, Mr. Palouse has testified. If it is a condition proceeding, why does the agreement say failure to provide appropriate documentation within three days of hire will result in immediate termination of employment? It would mean that you're employed before you have to turn over this information. You get fired if you don't do it. It's not a condition proceeding. It's an element of the contract. Further complicated by the fact that the signed agreement that they – I mean, first of all, if they're going to argue that she was hired over a telephone call, why send her something in writing that she has to sign, has to return, and has to comply with the contract itself? Because he says – he testified that that's what they agreed to over the telephone. The written agreement was really meant to confirm it. No, no. This is the standard procedure that they undergo in certain situations. In my judgment, if you have a large corporation who has their corporate headquarters in Illinois, if they send people out all over the country, bring them back for what we consider, again, and what he testified to as a pre-employment process, and also if you don't comply and if you don't go through the pre-employment process and pass that, you will not be an employee of the corporation. Palouse testified that they reached their agreement on her employment during the telephone conversation and that the letter was meant to confirm it, not establish it. The commission agreed with that version. They also indicated in their opinion that the drug test was completed before she ever entered Illinois, wasn't done in Illinois, and they also indicated that this business about the documentation for immigration purposes was not a condition preceded. Now, they believed Palouse. They didn't believe her. Now, why is that against the manifest way of the evidence? No rational side effect would agree with them. Well, when you say they didn't believe her, how did they not believe Mr. Palouse when he used the words will become an employee pre-employment process? Because they read the agreement that said failure to provide the documentation within three days of hire will result in termination. Termination can't occur unless there has been unemployment prior to that. You don't fire people that haven't been hired. Well, how do you get around the fact that Mr. Palouse testified to the fact that if, in fact, she didn't comply with the agreement, she wouldn't have been an employee of the company? She wouldn't have been. She would have been fired. And that's exactly what the agreement says. I disagree with that interpretation. You disagree that that's what it says? I'm sorry? You disagree that that's what it says? No, I disagree with the fact that you have a large corporation who sends people out all over the country. Forget about large corporations, small corporations. That doesn't make any difference. The question is where did the last act occur? And on that issue, this is a factual question for the commission. And while your argument is very plausible, so is your opponent's. So how can you suggest that no rational try or effect would have decided it in the manner in which the commission did? Because that's what you have to do. The only thing that happened in Georgia, other than I suppose the injury, was the telephone conversation that applied to the discussion. Everything else occurred in Woodridge, Illinois, after she arrived here. And, in fact, the interesting thing is her termination. When she resigned, they accepted it in Woodridge, Illinois. Was her resignation effective when she tendered it in Georgia, or was it effective when they received it here in Illinois? Why is that so unusual? You're raising a sort of logical argument, but then again, remember, she's out of State. You keep saying that why does this paperwork have to be completed in Woodridge? Why do these eligibility verifications? Because she's out of State. Are you saying that she's going to start working with no paperwork being filed anywhere? Of course paperwork has to get completed, doesn't it? Another interesting aside to this is the fact that, as we indicated in our brief and as was part of the evidence, the first withholding tax that they provided to her, they require her to pay tax in Illinois. Now, was she hired in Illinois or was she not? Does that help support the fact that I'm asserting that she was hired in Illinois? Does that make a difference? If I were hired in Georgia and did my work in Illinois, wouldn't I have to pay all my income tax? What difference does it make where she pays income tax? I don't understand. If you're a resident of Georgia, no matter where you do your work, you report your income in your State office. Oh, I don't have to pay income tax in the State of Illinois if I earn my income here? I think you're going to find out you're wrong. You have to pay income tax for whatever income you earn in the State of Illinois. You may have to file two returns, one in Georgia and one in Illinois, but you've got to pay income tax when you earn money here. All right. Well, again, we need the money. I'm sorry? We need the money. What did you learn during these arguments? I'm sorry? Never mind. All right. I have nothing else. Okay. Thank you, counsel. Counsel, you may reply. May it please the Court. Good morning, counsel. My name is Matthew Gnafo. I represent the file of educational in this matter. Off the bat, Your Honors, there is certainly enough evidence in the record to support the commission's decision. The facts were briefly discussed just a few minutes ago, and I just want to point out a few of the specific facts that were found by the commission in this decision. Mark Palouse, the follow-up representative, testified that on February 11th, he made an offer of employment to Petitioner on the phone and she accepted, after which he sent a letter, same date, February 11, 2008, spelling out the terms of Petitioner's employment. Now, every time I have an important conversation on the telephone, I like to confirm it in writing. That's exactly what was done in this situation. Furthermore, he testified that an email went out that same date, February 11, 2008, from Follett's administration operations manager laying out the details for the flight, the hotel, transportation, and that training was going to begin. And this was issued the same day, February 11, 2008. Now, furthermore, he testified that Follett would only pay for individuals to come to Chicago for training if the individual was going to start as a new hire. And based on Petitioner's acceptance of the offer, arrangements were made to fly her to Chicago. This wasn't a situation that they were flying her in for an interview. The interview had taken place over the phone through a representative from Texas, I believe. That's my understanding. She already had accepted employment. That's why they paid for her to come to Chicago to start the training. Yes, Your Honor. The records suggest maybe that interview occurred in Georgia with a Follett representative. Exactly. The interview had happened already. The employment relationship began when the offer was accepted. The travel to Chicago wasn't to further the employment process because that relationship, that acceptance had already started on February 11, 2008. Counsel, that's what I wanted to ask you. How do you respond to opposing counsel's main argument that if she accepted the offer over the telephone, then why was an offer letter sent if they had already reached an agreement? How do you respond to that? My position is that it was not an offer letter that was sent. That it was a letter confirming the conversation that was had on the telephone on that day. Furthermore, the commission would have- How about those conditions that opposing counsel thinks are preceding conditions? How do you answer that? Okay. Well, the drug test was in Georgia. The employment verification was done by the federal government. There's nothing in the record indicating that verification was done in Illinois. And the commission actually specifically discussed these separate requirements after the employment was accepted. The commission found that the requirements petitioner showed she was legally permitted to work in the U.S. and pass a drug test. May have been conditions in the contract, but the offer and acceptance and thus the contract were made in Georgia. Now, to me, it seems like the commission is specifically responding to the Mahoney case. And the rule from the Mahoney case is the focus of the inquiry is on where the contract was made and not locations where conditions in the contract were to be performed. And then this didn't actually come up on my opponent's oral argument. There's also the issue of when she signed the date of this form. So it's dated February 13, 2008. She says that she backdated it from February 18, 2008. And she admitted that she wasn't advised by the filed representative to backdate the form. Now, the commission found that petitioner, while in Georgia, signed the 211-08 offer on 213-08, which is the date petitioner claims to have received the written job offer. This is a specific finding by the commission now. Petitioner's testimony, she backdated her acceptance to 213-08 after arriving in Illinois on 218-08 is not credible. They don't buy that story whatsoever, Your Honors. Now, the language that the commission used in its decision. The commission finds the overwhelming evidence indicates that on February 11, 2008, respondent telephoned petitioner in Georgia and offered petitioner a job, which petitioner clearly accepted while in Georgia, despite her conflicting testimony. So we've got overwhelming evidence of a clear acceptance while in Georgia, straight out of the commission decision, Your Honor. There's nothing in the record, nothing in the facts, which would support that that decision be reversed on a manifest way to the evidence standard. I do want to point out, actually, this was already brought up by His Honor, that the contract itself, the writing itself, 211-08, indicates termination of employment, not that an offer would be rescinded. And something important to remember here, and I bring it up because it was in counsel's initial brief, is she wasn't denied all benefits whatsoever. It's not as if she doesn't get Illinois claim that she is high and dry for this worker's compensation case. She testified on page 54 of the transcript. She got Georgia benefits. She was paid for this claim. Apparently, presumably, Illinois is going to have more generous benefits. That's what she's trying to go after here in this claim. And it's not going to be proper because Illinois does not have jurisdiction. And just to counter the very last note that my opponent had in his reply brief, there was a question and answer exchange between Mark Pellouse and a representative from my firm about petitioner's hire date being February 18th. Now, in his brief, he very conveniently leaves out the next question and answer following what he does cite, and that confirms that the acceptance occurred before the hire date of February 18th, 2008. If there are no more questions, I'll briefly conclude, Your Honors. Thank you very much. The commission is finding Illinois does not have jurisdiction over this claim, was carefully reasoned and properly decided based on the manifest weight of the evidence, and as such, it should be affirmed. Thank you very much. Just briefly, and I refer you to the document that is at issue, and it states, I understand that my employment is contingent upon verification of the legal right to work in the United States as outlined in the Immigration Reform and Control Act, as well as completion of a background check and drug test. The document itself says that it's contingent and not final until she comes to Illinois and does those things. It doesn't say it's not final. Where does it say it's not final? I'm sorry? Where does it say it's not final? It says it's contingent. Yeah, contingent. Employment is contingent. If you have a conditional or contingent agreement, it doesn't become an agreement until the contingencies are met. It doesn't? No. What if there is a contingency that if violated, my employment will be terminated? Well, but that's not here. Well, of course it isn't here. It says here failure to give the documentation within three days after hire will result in termination. You can't terminate unless you are hired. Well, that's your interpretation. My interpretation is that the agreement itself says. Can I ask a question? Does it say that? Am I misquoting this agreement? No, you're not. Failure to provide appropriate documentation within three days of hire will result in immediate termination of employment in accordance with the terms of the Immigration Reform and Control Act. Does it say that? Yes. Okay. But again, one could easily say that those provisions don't occur or happen until after she's actually met these other conditions and then the agreement becomes final. Again, the only thing as far as the contract is concerned is a telephone call. Everything else occurred in Illinois. And you can't avoid the testimony of the person who hired her that refers to pre-employment, refers to you won't be hired if you don't do this. And again, my position is, and again, I think it's important for my client and other people in the same or similar situation, if this corporation or any other corporation wants to avoid jurisdiction in Illinois when they send employees out to work in other states, then they have to change their hiring process to protect themselves, I suppose, and actually protect the employees. But again, you can't send employees out, in my judgment, including my client, to other states under these circumstances where you bring them in, require them to do certain things, and then want to assert that if you're hurt you have to apply the state that you're in or the state that you're injured in. If they want to protect themselves, then change their hiring process. Don't have contingent or conditional situations where you bring people in and then you can send them away. That's my point. Thank you, counsel. Thank you, counsel, for your arguments. As a matter of taking our advisement, this position shall issue. Please call the next.